UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | Case No. 4:18-cr-00346-DCN |
|---|---|
| Plaintiff, | **AMENDED MEMORANDUM DECISION AND ORDER** |
| v. | |
| DAVID HANSEN, | |
| Defendant. | |

# I. INTRODUCTION

This matter comes before the Court on *Defendant* David Hansen's Motion for Protective Order. Dkt. 18. In his Motion, Hansen moves for a protective order prohibiting the Government's filter team from disclosing potentially privileged materials to members of its prosecution team.

For the reasons set forth below, the Court DENIES Hansen's Motion for Protective Order.

# II. BACKGROUND

Yellowstone Partners, LLC, is an investment advisory firm located in Idaho Falls, Idaho. On November 9, 2016, the Government executed a warrant to search Yellowstone Partners' premises. Dkt. 26, at 3. At that time, David Hansen was the owner and Chief Executive Officer of Yellowstone Partners, and his computer hard drive was forensically imaged during the search. Dkt. 18-1, at 2; Dkt. 26, at 3. The Chief Compliance Officer's computer hard drive and the Yellowstone Partners' server were also forensically imaged.

Dkt. 26, at 3.

A few weeks later, on November 30, 2016, Hansen's counsel sent an email to Joshua Hurwit, the Government's lead attorney on this case. Dkt. 18-1, at Ex. 2. In that email, Hansen's counsel provided names of law firms and attorneys so that the Government could search the hard drives and server for privileged materials. *Id.* Hansen's counsel explicitly elected for the Government to use a taint review process: "It is our expectation that the government will comply with its obligations under the law for the handling and return of such materials including through the use of a taint process and team." *Id*.

Using the provided names, an FBI Information Technology Specialist-Forensic Examiner flagged 56,000 "presumptively protected items" for the filter team to review for privilege. *Id.* at Ex. 1; Dkt. 26, at 3.

Then in February 2017, the Government created a filter team and a four-stage filter review process:

1. The filter team would review the items and label them "protected," "potentially protected," or "non-protected."
2. The AUSA would take the items identified in stage one as "potentially protected" and sort them as "protected" or "non-protected." Then the AUSA would conduct a quality control review of the items labeled "protected" and "non-protected."
3. The AUSA would give Hansen's counsel the "non-protected" items so that they could make privilege objections.
4. The AUSA would give the prosecution the "non-protected" items for which Hansen's counsel did not assert privilege objections.

Dkt. 26, at 3–4.

The filter team completed stage one between March 2, 2017, and July 7, 2017. *Id.*

at 4; Dkt. 18-1, at Ex. 1. In August 2017, the AUSA, James Schaefer, completed sorting the "potentially protected" items. Dkt. 26, at 4. Between September 2017, and June 2018, Schaefer conducted a quality control review. *Id.* at 5. He reviewed the "non-protected" items on Hansen's computer and concluded that 30% of those should have been labeled "protected." *Id.* Because of that error rate, Schaefer had the filter team review again the Chief Compliance Officer's hard drive and the server. *Id.*

Since he had completed the review of the "non-protected" items found on Hansen's computer, Schaefer provided Hansen's counsel with those 5,473 documents on September 7, 2018. *Id.* at 6; Dkt. 18-1, at 4, Ex. 3. The document production was accompanied with a letter explaining that the documents came from only Hansen's hard drive though documents that were also seized from the Chief Compliance Officer's hard drive and the server. Dkt. 26, at 6; Dkt. 18-1, at Ex. 3. That letter also set an October 5, 2018, deadline for Hansen's counsel to make any privilege objections. Dkt. 18-1, at Ex. 3.

Hansen's counsel wrote back to Schaefer explaining that the October 5, 2018, deadline was unreasonable. Dkt. 26-2. However, Hansen's counsel still agreed to "review the materials provided in a timely fashion." *Id.* Hansen and his counsel thereafter reviewed those "non-protected" items for privilege objections and returned documents and interim privilege logs on October 29, November 5, November 21, and December 20, 2018. Dkt. 26-3, 26-4, 26-5, & 26-6. Of the 5,473 documents, Hansen's counsel deemed 805 privileged. Dkt. 18-1, at 5. The remaining documents were provided to the prosecution. Dkt. 26, at 6.

Hansen was indicted on November 15, 2018, on 23 counts of tax and wire fraud.

On December 20, 2018, Schaefer gave Hansen's counsel the "non-protected" documents from the Chief Compliance Officer's hard drive and the server. *Id.* at 7. There were 20,463 documents comprising this production. Dkt. 18-1, at 5. Schaefer asked that Hansen make any privilege objections to this second set of documents by February 15, 2019, and if Hansen needed more time, they were to contact Schaefer. Dkt. 18-1, at Ex. 4; Dkt. 26-8.

Rather than completing the privilege review or requesting more time, Hansen filed this Motion for Protective Order Prohibiting Government Access to Potentially Privileged Materials.

### III. LEGAL STANDARD

Rule 16(d)(1) "Protective and Modifying Orders" provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The "language of Rule 16(d)(1) . . . appears to focus on enforcing the mandatory disclosure provisions of Rule 16 itself." *U.S. v. Grace*, 526 F.3d 499, 511 (9th Cir. 2008).

"By its plain terms, Rule 16 speaks to specified kinds of discovery in criminal cases, and its enforcement provisions [(d)(1) and (d)(2)] parallel this specificity rather than addressing the general authority of the court. Rule 16(d)(1) refers to granting relief related to 'discovery or inspection,' which is Rule 16's title . . . ." *Id.*

### IV. ANALYSIS

In his motion, Hansen first asserts that the Court has authority pursuant to Rule

Hansen was indicted on November 15, 2018, on 23 counts of tax and wire fraud.

On December 20, 2018, Schaefer gave Hansen's counsel the "non-protected" documents from the Chief Compliance Officer's hard drive and the server. *Id.* at 7. There were 20,463 documents comprising this production. Dkt. 18-1, at 5. Schaefer asked that Hansen make any privilege objections to this second set of documents by February 15, 2019, and if Hansen needed more time, they were to contact Schaefer. Dkt. 18-1, at Ex. 4; Dkt. 26-8.

Rather than completing the privilege review or requesting more time, Hansen filed this Motion for Protective Order Prohibiting Government Access to Potentially Privileged Materials.

### III. LEGAL STANDARD

Rule 16(d)(1) "Protective and Modifying Orders" provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The "language of Rule 16(d)(1) . . . appears to focus on enforcing the mandatory disclosure provisions of Rule 16 itself." *U.S. v. Grace*, 526 F.3d 499, 511 (9th Cir. 2008).

"By its plain terms, Rule 16 speaks to specified kinds of discovery in criminal cases, and its enforcement provisions [(d)(1) and (d)(2)] parallel this specificity rather than addressing the general authority of the court. Rule 16(d)(1) refers to granting relief related to 'discovery or inspection,' which is Rule 16's title . . . ." *Id.*

### IV. ANALYSIS

In his motion, Hansen first asserts that the Court has authority pursuant to Rule

16(d)(1) to grant his request for a Protective Order. He then gives three reasons for the Court to find good cause for this order: (1) the government's conduct has imposed a significant burden; (2) the government's conduct does not adhere to the warrant's terms; and (3) the requested review will be unnecessary. Each will be addressed in turn.

### A. Rule 16(d)(1) Authority for Protective Orders

Hansen argues that the Court has authority under Rule 16(d)(1) to enter a protective order to prohibit the prosecution from receiving "non-protected" documents that Hansen has yet to review for privilege objections. However, because these documents are not part of discovery, the Court does not have authority under Rule 16(d)(1) to enter such an order.

Rule 16 "addresse[s] the kinds of information the government and defendants are *obligated* to provide to each other before trial by way of discovery and the district court's authority to enforce those obligations." *Grace*, 526 F.3d at 510 (emphasis in original). "With respect to the district court's authority, Rule 16(d)(1) permits the court, 'for good cause, [to] deny, restrict, or defer discovery or inspection, or grant other appropriate relief,' and Rule 16(d)(2) grants the court broad authority to enforce 'this rule,' including by any order 'that is just under the circumstances.'" *Id.* (quoting Fed. R. Crim. P. 16(d)(1) & (2)). This "broad authority," however, does not extend beyond discovery. *See id*.

Though "Rule 2 bolsters that authority," it does not fundamentally change it. *Id.* "The thrust of Rule 16—viewed in light of Rule 2—is to allow the district court to ensure that the parties comply with the letter and spirit of [Rule 16]." *Id.*

AMENDED MEMORANDUM DECISION AND ORDER - 5

In addition to explicit authority, federal courts have inherent, supervisory authority. *U.S. v. Hasting*, 461 U.S. 499, 505 (1983). With that authority, "federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *Id.* Federal courts cannot use this power, however, "to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle v. U.S.*, 517 U.S. 416, 426 (1996). *See also Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 254 (1988); *Thomas v. Arn*, 474 U.S. 140, 148 (1985).

Recognizing that limit to inherent, supervisory authority, the Ninth Circuit held in *Atchison, Topeka & Santa Fe Railway Co. v. Hercules Inc.* that "inherent power to control . . . dockets" cannot "nullify the procedural choices reserved to parties under the federal rules." 146 F.3d 1071, 1074 (9th Cir. 1998).

Here, the Government seized the documents in dispute during the execution of a search warrant. They originate from Hansen's hard drive, the Chief Compliance Officer's hard drive, and the Yellowstone Partners' server. No one has requested their production through discovery.

In Hansen's Reply brief, he argues that Rule 2, Rule 41, and the Court's inherent authority support a Rule 16(d)(1) protective order in this case. Dkt. 29, at 7–8.

Rule 2, however, only "allow[s] the district court to ensure that the parties comply with the letter and spirit of [Rule 16]." *Grace*, 526 F.3d at 510. The "letter and spirit" of Rule 16 relates to discovery obligations and reciprocity. *See id.* ("[T]he language of Rule 16(d)(1) and (2) . . . appears to focus on enforcing the mandatory disclosure provisions of Rule 16 itself."); Fed. R. Crim. P. 16. *See also, e.g., U.S. v. Stever*, 603 F.3d 747, 752

(9th Cir. 2010) ("[Rule] 16 grants criminal defendants a broad right to discovery."); *U.S. v. Fort*, 472 F.3d 1106, 1122 (9th Cir. 2007) (Fletcher, J., dissenting) (noting that Rule 16(a)(2) "protects work product" and Rule 16(d)(1) "protects witnesses"); *U.S. v. Mahon*, 2010 WL 520826, *1 (D. Ariz. 2010) ("Rule 16 should be read to create a symmetry between the government's disclosure obligations and those items that are protected from disclosure."); *U.S. v. Salyer*, 271 F.R.D. 148, 150 (E.D. Cal. 2010) ("Rule 16 of the Federal Rules of Criminal Procedure governs criminal discovery. . . . [I]t now imposes discovery obligations on the government and the defense."). Therefore, Rule 2 does not supplement Rule 16 in a way that would allow this Court to enter this particular protective order.

Rule 41 regards searches and seizures. Fed. R. Crim. P. 41. While that rule is relevant to the materials seized during the warrant's execution, it does not discuss protective orders. Rather it prescribes a motion to return property for "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property." Fed. R. Crim. P. 41(g). It also provides that "[a] defendant may move to suppress evidence in the court where the trial will occur, as Rule 12 provides." Fed. R. Crim. P. 41(h).

Inherent authority also does not allow this Court to enter this protective order because the order would actually conflict with Rule 41 and Rule 12. Using a protective order to prevent the Government from using these documents would circumvent and nullify the procedural option to move to suppress evidence. Hansen in his motion even signals his intent to file a motion for suppression of this same evidence. Dkt. 18-1, at 9–

AMENDED MEMORANDUM DECISION AND ORDER - 7

10.

In conclusion, the Court does not have authority under Rule 16(d)(1) or under alternative authority to grant this motion.

### B. Hansen's Burden

The above analysis aside, even assuming arguendo that the Court had the authority to grant Hansen the relief he seeks, he has not met the requisite "good cause" standard for the Court to approve such an order.

As previously noted, Hansen contends that good cause exists for a protective order in this case because: (1) the government's conduct has imposed a significant burden; (2) the government's conduct does not adhere to the warrant's terms; and (3) the requested review will be unnecessary. The Court disagrees on each point.

First, Hansen suggests good cause is present because the government's deadline puts an undue, significant burden upon him.

Hansen blames the government for the timing of these problems since "[t]he prosecution chose when to address the privilege issue and seek an indictment in this case." *Id*. As such, he argues he should not have to wait longer for his trial[1] to "accommodate the government's pretrial production delays." *Id.* at 8.

"As with all evidentiary privileges, the burden of proving that the attorney-client

---

[1] Hansen's trial is currently scheduled for July 29, 2019. Hansen does not want to waive any privilege objections but does not feel that he has adequate time to review all the files before the existing deadline. He reasons that 20,436 files will take an inordinate amount of time to review since reviewing the first set of 5,473 files took his legal team a collected 180 hours. Dkt. 18-1, at 4, 7. In light of this, Hansen feels that he will have to postpone preparing for trial in order to accomplish this task and that the choice between reviewing these files and preparing for trial is "untenable" and "Hobbesian." *Id.* at 2, 7.

privilege applies rests not with the party contesting the privilege, but with the party asserting it." *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).

Though the filter team did not produce the results of its privilege review until December 20, 2018, Hansen could have reviewed the documents on the Chief Compliance Officer's hard drive and the server before that time. Hansen was aware of the seizure and was not deprived of the items searched. Because he could have identified privilege at any time after the November 9, 2016 search, Hansen, arguably, might have even waived his privilege due to inaction. *See U.S. v. De La Jara*, 973 F.2d 746, 750 (9th Cir. 1992) (noting that privilege is waived when the "privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter" and finding that the defendant waived privilege by six-months of inaction); *U.S. v. SDI Future Health, Inc.*, 464 F.Supp.2d 1027, 1046 (D. Nev. 2006) (because defendant did not "take steps to identify and assert its privilege . . . within a reasonable time after it was granted access to the seized records" the privilege was waived).

In this case, the Government invited Hansen to request an extension if they did not believe the privilege review could be completed by the deadline. Dkt. 26-8. Requesting an extension would have been reasonable. In fact, Hansen was granted more time for the privilege review of Hansen's own hard drive. *See* Dkt. 26-2, 26-3, 26-4, 26-5, & 26-6.

Other reasonable means may have included filing a motion for the return of the seized materials pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, or a motion to suppress under Rule 12. *See De La Jara*, 973 F.2d at n.2.

Furthermore, the filter team has already sorted through the documents for privilege. The documents in question are those labeled "non-protected" by the filter team; the "protected" documents will not be given to the prosecution. Hansen argues that he asserted privilege for 805 of the 5,473 "non-protected" documents from his own hard drive. Thus, he believes there are privileged documents among the 20,436 "non-protected" documents from the Chief Compliance Officer's hard drive and the server. However, though the 805 documents listed on his privilege log were not turned over to the prosecution, they were not definitely privileged. The burden of proving privilege is squarely upon Hansen. *See Weil*, 647 F.2d at 25. Hansen has not met this burden, nor substantially complied with the strict requirements of a privilege log. As the Government notes, Hansen's privilege log "contain[ed] hundreds of . . . items that clearly are not privileged, including . . . over 200 items described as 'embedded image, logo, signature block.'" Dkt. 26, at 6–7 n.2.

Thus, the argument that this review is an undue, significant burden is meritless and not good cause for a Rule 16(d)(1) protective order.

Second, Hansen asserts there is good cause for a protective order because the government did not adhere to the review procedures outlined in the affidavit in support of the warrant. Hansen notes that the affidavit specifies that:

> Electronic documents seized at the execution of the warrant will be filtered so as to exclude any documents associated with counselors or law firms known to be representing Yellowstone. The filtered documents will be reviewed by a taint team and any documents which fall within the attorney-client privilege will be excluded from the investigators assigned.

*In re Search of Yellowstone Partners*, Case No.:4:16-MJ-09607-REB, No.3 (D. Idaho

AMENDED MEMORANDUM DECISION AND ORDER - 10

Nov. 14, 2016).

Hansen argues that the actual review failed to meet the standard set forth by the affidavit in two respects: (1) some of the materials are outside of the warrant's scope and (2) some are irrelevant and "not even potentially privileged, because they do not include or reference [his] counsel." Dkt. 18-1, at 9. He argues reviewing the excessive number of documents, which may be outside of the warrant's scope or which are clearly not privileged, would "waste time." *Id.*

It is unnecessary for the Court to determine whether the materials are beyond the warrant's scope since "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). Hansen has not done so. If the materials are beyond the warrant's scope, another procedural remedy is to move to suppress evidence. Fed R. Crim. P. 41(h). A protective order, on the other hand, is not an appropriate remedy.

As to the argument concerning irrelevant documents, it is not a surprise that some of the documents labeled "non-protected" are clearly not privileged. "[T]he filter team does not believe [these documents] are privileged." Dkt. 18-1, at Ex. 3. While Hansen could have chosen to make objections at any time, he instead chose to wait for the results of the filter team's review before making objections. He need not "waste time" reviewing every document the filter team labeled "non-protected." Alternatively, he could use search filters to expedite the review or simply trust the results of the filter team process. Finally, Hansen himself could have conducted a privilege review before the filter team finished its review.

Hansen's argument that the Government failed to adhere to the warrant does not rise to the level of good cause necessary for a protective order.

The final argument in Hansen's Motion for Protective Order is that the privilege review "will ultimately prove unnecessary." Dkt. 18-1, at 9. He "anticipates filing a motion to suppress materials seized in the Yellowstone search," and if that motion is granted, the privilege review will have been for naught. *Id.* at 9–10. If Hansen believes that is true, then the obvious solution is to not review the documents for privilege. He is, after all, not required to conduct this review. On the other hand, it seems imprudent to rely on an unfiled motion—which may or may not be granted—as the rational for not performing a critical discovery task that Hansen is free to undertake at any time.

In short, this argument does not provide good cause for a protective order.

## V. ORDER

THE COURT HEREBY ORDERS:

1. Hansen's Motion for Protective Order Prohibiting Government Access to Potentially Privileged Materials (Dkt. 18) is DENIED.

2. Hansen must make any remaining privilege objections within fourteen (14) days of the issuance of this Order.

DATED: June 6, 2019

_____
David C. Nye
Chief U.S. District Court Judge