UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA | Case No. 4:18-cr-00346-DCN |
|---|---|
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| DAVID HANSEN | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court is Defendant David Hansen's Motion for an Evidentiary Hearing and to Suppress. Dkt. 36. In his Motion, Hansen moves for two things: (1) a *Franks* hearing to challenge the veracity of the warrant affidavit, and (2) the suppression of evidence seized. After reviewing the briefing and the record, the Court finds that a *Franks* hearing is unwarranted, so the Motion is DENIED in PART as it relates to the *Franks* hearing. The remainder of the Motion remains under consideration, and the Court will set a hearing on the suppression issues in due course. However, that hearing will not be a *Franks* hearing and thus may not include any challenge to the veracity of the affidavit.

## II. BACKGROUND

Yellowstone Partners, LLC, ("Yellowstone") is an investment advisory firm located in Idaho Falls, Idaho. On November 9, 2016, the Government executed a warrant

to search Yellowstone's premises. Dkt. 36-1, at 9. At that time, David Hansen was the owner and Chief Executive Officer of Yellowstone.[1]

The search warrant in this case was predicated on the affidavit (Dkt. 36-2) of FBI Special Agent Drew McCandless ("Special Agent McCandless"). Hansen argues that Special Agent McCandless misstated or omitted material facts in the affidavit and that without those errors, the Court would not have found probable cause for the search warrant. Given these alleged falsities, he asks for a *Franks* hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

### III. LEGAL STANDARD

At a *Franks* hearing, a defendant may challenge the veracity of the warrant affidavit. *Franks*, 438 U.S. at 155–56. In *Franks*, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id*. "Allegations of negligence or innocent mistake are insufficient." *Id.* at 171. Conclusory "allegations of deliberate falsehood or of reckless disregard for the truth" are also not enough; rather, the allegations of deliberateness or recklessness "must be accompanied by an offer of proof." *Id.* at 171. In order to obtain a *Franks* hearing, the defendant's motion must meet five requirements:

---

[1] The Government disputes that Hansen owned Yellowstone at the time of the search because he had pledged his interest to acquire a loan. Dkt. 41, at 11.

> (1) [T]he defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations, (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause."

*United States v. Dicesare*, 765 F.2d 890, 894–95 (9th Cir. 1985).

Affidavits are presumed valid. Accordingly, the burden of showing otherwise is high. *Franks*, 438 U.S. at 171. The Supreme Court requires a *substantial* showing from the defendant, in part, because "if such hearings were conducted routinely . . . , they would be misused by defendants as a convenient source of discovery." *Id.* at 167.

Even if the defendant makes a substantial showing "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included [in the affidavit]," a hearing still may not be required. *Id.* at 155, 171–72. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72.

Probable cause for a search warrant exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The probable-cause showing is different for search warrants than for arrest warrants:

> [W]hile an arrest warrant and a search warrant both serve to subject the probable-cause determination of the police to judicial review, the interests protected by the two warrants differ. An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A

search warrant, in contrast, is issued upon a showing of probable cause to believe that the legitimate object of a search is located in particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police.

*Steagald v. United States*, 451 U.S. 204, 212–13 (1981).

## IV. ANALYSIS

Upon thorough review, the Court finds that Hansen has not substantially shown that Special Agent McCandless intentionally or recklessly included false statements in the affidavit. Furthermore, had the alleged misstatements and omissions been corrected as Hansen proposed, probable cause for the search would still exist. For those reasons, the Court DENIES Hansen's request for a *Franks* hearing.

A. Intentional or Reckless False Statements

Paragraphs 7 through 43 of the affidavit provide the basis for a probable cause determination. Dkt. 36-2, at 5–12. Hansen challenges 20 of those paragraphs. *See* Dkt. 36-1, at 15–34. For clarity, the Court has categorized the challenges as follows: (1) Paragraph 21; (2) trivial mischaracterizations; (3) omissions of Cameron High's role; (4) omission of information discrediting Michael Dustin; (5) inclusion of information protected by attorney-client protection; and (6) omission of excuses given to the SEC. For each challenge, Hansen fails to meet his burden to substantially show that a false statement was intentionally or recklessly included in the affidavit.

1. *Paragraph 21*

    The only falsity Hansen alleges is in Paragraph 21.[2] That paragraph outlines:

    > COO suggested to Hansen that operations should take over the billing of fees, and the compliance department should then review the billing. Hansen refused to give up responsibility of the fee billing, telling COO that the SEC preferred the billing be completed by the compliance department.

Dkt. 36-2, at 8.

However, the investigation report[3] differs in noting that Hansen, not Paul Weimer (the COO), made this suggestion and that Cameron High, not Hansen, pushed back:

> HANSEN suggested that operations take over the billing of client accounts and the compliance officer, CAMERON HIGH review the billing. HIGH was completing the billing on investor accounts and told WEIMER that the SECURITIES EXCHANGE COMMISSION (SEC) preferred that the compliance officer do the billing. WEIMER did not know any different and did not push the issue, but now WEIMER questions whether HIGH was being truthful.

Dkt. 36-6, at 3.

The Government contends that the report unintentionally and mistakenly swapped Hansen's and Weimer's names and that the affidavit correctly identifies who made the suggestion.[4] Dkt. 41, at 38. As for who resisted the suggestion, the Government contends that Special Agent McCandless inadvertently used Hansen's name instead of High's. *Id.* at 18. Hansen does not offer any evidence to contest the Government's position even though Hansen has the burden to offer proof that the falsity was intentional or reckless

---

[2] Hansen alleges that the other challenged paragraphs mischaracterize the investigation reports or omit material information.
[3] Special Agent McCandless based his affidavit upon investigative interviews of Yellowstone employees. Those interviews are summarized in investigation reports.
[4] The context surrounding this statement in the report confirms the Government's argument. The first sentence of this excerpt contains the err. The next two sentences identify Weimer as the person who received High's response to the suggestion; as such, it makes sense that Weimer, not Hansen, suggested operations take over billing.

and was more than a negligent or innocent mistake.[5] *See Franks*, 438 U.S. at 171

("Allegations of negligence or innocent mistake are insufficient.").

2. *Trivial Mischaracterizations*

Upon review, the Court finds that many of the challenges Hansen raises concerning the affidavit are trivial and unsubstantiated. Hansen alleges that minor phrases included or omitted in Paragraphs 10, 13, 18, 22, 28, 29, 31, 33, 34, 35, 38, 42, and 43 mischaracterize the investigation reports. Frankly, they do not. Hansen failed to meet his burden to show that any of these "mischaracterizations" were false—let alone, intentionally false.

For instance, Hansen alleges Paragraph 18 inaccurately "states that Weimer 'learned of the overbilling of fees in early 2015,' thereby implying that he was aware of systemic overbilling or overbilling of multiple accounts at that time." Dkt. 36-1, at 16. However, the investigation reports show that Paul Weimer clearly told Special Agent McCandless just that—that Yellowstone overbilled multiple accounts and when he first learned of the overbilling. Dkt. 36-6, at 4. As such, Paragraph 18 is not a false statement nor a mischaracterization but an accurate reflection of the facts in this case. Hansen's other objections are likewise baseless, as those statements accurately summarize the investigation reports as well.

---

[5] In his reply brief, Hansen claims that "[t]he government has not provided any evidence, like an affidavit, amended reports, or interview notes, to support its claim that the written interview reports were made in error." Dkt. 53, at 10. However, that is not the Government's burden. It is Hansen's burden to substantially show otherwise.

3. *Omissions of Cameron High's Role*

Hansen also argues that the affidavit omits from Paragraphs 12, 19, 20, and 36 exculpatory statements in the investigation reports that suggest Cameron High may have been culpable instead of Hansen. Once again, Hansen has failed to meet his burden to "make a substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *See United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985).

Notably, the affidavit does not omit High's involvement. For instance, Paragraph 19 is challenged for omitting High's and Hansen's respective roles, yet Paragraphs 13 and 36 contain what Hansen alleges Paragraph 19 omits. *See* Dkt. 36-2, at 6, 7, 10.

Furthermore, these alleged omissions are not misleading. The search warrant did not require the Affidavit to show Hansen was involved in criminal activity; it required the Affidavit to show "there [was] a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. *See also Steagald*, 451 U.S. at 212–13 (explaining the difference between probable cause for a search warrant and an arrest warrant). Here, the "particular place" was Yellowstone's premises. The warrant was not specific to Hansen. The affidavit even suggests that others may have committed these crimes. Dkt. 36-2, at 2. The warrant authorized a search of Yellowstone's premises because Yellowstone overbilled targeted customers not because Hansen had a greater or lesser role than High.

4. *Omission of Information Discrediting Michael Dustin*

Hansen alleges that Paragraph 27 omits information discrediting Michael Dustin.

In *Dicesare*, the Ninth Circuit explicitly held that "the veracity of only the affiant [may] be challenged" in a motion for a *Franks* hearing. *Dicesare*, 765 F.2d at 895. *See also United States v. Perdomo*, 800 F.2d 916, 921 (9th Cir. 1986) ("Allegations that statements reported in the affidavit and made to the affiant are false are not sufficient to satisfy the requirements for a *Franks* hearing unless the defendant contends that the affiant has misrepresented the statements made by another."). Here Hansen challenges the veracity of Dustin, not the veracity of the affiant, Special Agent McCandless. Therefore, the omission is irrelevant.

Furthermore, while Hansen alleges Dustin was biased against him and Yellowstone because Dustin was terminated from Yellowstone, that allegation does not discredit Dustin's account. The Supreme Court has explained:

> [I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary. Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.

*Gates*, 462 U.S. at 233–34 (citation omitted).

Dustin provided a detailed description of the alleged wrongdoing. He witnessed Yellowstone's business practices and the overbilling firsthand. He discussed his concerns about the overbilling with Weimer, with High, and with Hansen. Dustin and Weimer together confronted High and Hansen about the problems. Weimer and the other informants corroborated Dustin's account. For those reasons, Dustin is a credible informant despite any alleged ill motive rising from his termination.

5. *Inclusion of Information Protected by Attorney-Client Protection*

Hansen alleges that Paragraphs 27–29 includes information from a conversation Dustin secretly recorded and that the conversation is thus protected under attorney-client privilege. However, whether or not that privilege exists for the recording, Special Agent McCandless relied on what Dustin told him,[6] not the recording. Therefore, the omission is also irrelevant.

6. *Omission of Excuses Given to the SEC*

In its letter to the SEC, Yellowstone argued that Yellowstone's rapid growth, manual computation of fees, and evolving billing structure led to the overbilling. Hansen alleges that Paragraph 39 omits those excuses. Paragraph 39 says:

> Yellowstone has retained outside counsel with the law firm Lewis, Rocca, Rothgerber, Christie. Attorneys Phillip Feigin and Kenneth Rossman IV signed a self reporting letter dated July 29, 2016, and delivered to the SEC. Both Feigin and Rossman (through their law firm) are representing Yellowstone in the civil matter before the SEC. In the letter, Yellowstone admitted to overbilling and stated that it had made reimbursements totaling $4,495,782.62. According to the letter, reimbursements of $785,802.84 were still due, and Yellowstone was planning to make these payments last month (October 2016).

Dkt. 36-2, at 11.

Omitting Yellowstone's self-serving excuses from the affidavit did not affect the accuracy of the affidavit. To warrant a *Franks* hearing, the "omitted facts [must have been] required to prevent technically true statements in the affidavit from being misleading." *Stanert*, 762 F.2d at 781. Paragraph 39 is not misleading. It clearly and

---

[6] "An affidavit may properly be based on hearsay, on fleeting observations, and on tips received from unnamed informants . . . ." *Franks*, 438 U.S. at 167.

accurately reports that the letter acknowledged the overbilling and that Yellowstone reimbursed clients in the amount of $4,495,782.62 and planned to repay another $785,802.84. Absent the excuses, that statement still accurately reflects Yellowstone's disclosure to the SEC.

Furthermore, the affidavit did not need to include information regarding unlikely theories exculpating Yellowstone. *See United States v. Craighead*, 539 F.3d 1073, 1081 (9th Cir. 2008). The Ninth Circuit has explained:

> It is true that "deliberate or reckless omissions of facts that tend to mislead" can be grounds for a *Franks* hearing. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985). However, the omission rule does not require an affiant to provide general information about every possible theory, no matter how unlikely, that would controvert the affiant's good-faith belief that probable cause existed for the search.

*Id.*

The excuses Hansen wishes were in the affidavit are unlikely given the full context of the affidavit and investigation reports. Notably, Paragraphs 41–43 explain that Yellowstone specifically targeted accounts not subject to third-party review as opposed to other accounts. Dkt. 36-2, at 11–12. Special Agent McCandless was simply not required to include any theories Yellowstone proposed to justify its extensive and targeted overbilling.

Even so, throughout the affidavit, Special Agent McCandless reports incidents where Hansen and High provided excuses and proposed remedies for overbilling. *See, e.g.*, Dkt. 36-2, at 8 ("IET immediately contacted High and notified him of the deviations on the accounts. . . . The following Monday morning High told IET that the [redacted]

accounts had annual, quarterly, and semi-annual fees charged."); *id.* at 9 ("IET questioned Hansen about the planning fees and other withdrawals from the investment accounts. . . . Hansen replied that not all the accounts have planning fees but some select clients did because Hansen did special things for them."); *id.* at 10 ("It was decided that all accounts overbilled should be identified and steps taken to make corrective action in refunding any overcharges.").

Additionally, as discussed below, had these excuses been included in the affidavit, probable cause would still exist.

B. Probable Cause

Assuming arguendo that Hansen made a substantial showing for each challenge that Special Agent McCandless intentionally or recklessly included a false statement, Hansen is still not entitled to a *Franks* hearing because the amended affidavit still supports a finding of probable cause. *See Franks*, 438 U.S. at 171–72.

In theory, the amended affidavit would:

- include the excuses offered to the SEC;
- clearly specify what Hansen did and what High did in every instance where it is not already clear;
- include evidence Hansen believes discredits Dustin;
- omit information obtained from the conversation Dustin recorded;
- and include the proposed, minor edits to already accurate statements.[7]

---

[7] Hansen argues that the challenged paragraphs should simply be stripped from the Affidavit, leaving behind only the unchallenged paragraphs. However, the probable cause determination does not rest only

MEMORANDUM DECISION AND ORDER – 11

This amended affidavit would still create "a fair probability that contraband or evidence of a crime [would] be found" at Yellowstone's premises. *See Gates*, 462 U.S. at 238. The amended affidavit would still demonstrate significant and targeted overbilling of at least $5,281,585.46 across over 180 accounts. It would demonstrate that employees and customers raised concerns only for Hansen and High to deflect and pretend to resolve the problems. It would still demonstrate that Yellowstone failed to pay its bills on time even while it overbilled its customers. It would still demonstrate that Hansen instructed an employee to transfer money from Yellowstone's operating account to Hansen's personal accounts and to pay Hansen's personal mortgage with the operating account. And it would still demonstrate Hansen purchased a Ferrari, a Falcon jet airplane, and a helicopter and paid the loan payments with Yellowstone's operating account.

It follows that the amended affidavit would establish probable cause to search for evidence related to the offenses listed in the application for a search warrant (Dkt. 36-2, at 2). Those offenses are (1) wire fraud, (2) money laundering, and (3) engaging in monetary transactions in property derived from specified unlawful activity.

The "fair probability" standard for probable cause does not require the affiant to prove the crimes beyond a reasonable doubt nor to prove the crimes by a preponderance of the evidence. *See United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985). The Ninth Circuit has explained:

> For probable cause to exist, a magistrate need not determine that the evidence sought is *in fact* on the premises to be searched, *United States v. Bowers*, 534

---

on the leftover paragraphs but rather on "the affidavit, once corrected and supplemented." *Stanert*, 762 F.2d at 782.

> F.2d 186, 192 (9th Cir.), *cert. denied*, 429 U.S. 942, 50 L. Ed. 2d 311, 97 S. Ct. 360 (1976), or that the evidence is more likely than not to be found where the search takes place. *United States v. Taylor*, 716 F.2d 701, 705-06 (9th Cir. 1983). The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit. *Taylor*, 716 F.2d at 705-06 (quoting *United States v. Hendershot*, 614 F.2d 648, 654 (9th Cir. 1980)).

*Id.* (emphasis in original).

After thoroughly reviewing the affidavit and Hansen's allegations, the Court concludes that the amended affidavit would have created a fair probability that evidence was at Yellowstone's premises and that it was reasonable to search there. Accordingly, even if Hansen had substantially shown that the affidavit included false statements intentionally or recklessly—which he has not—Hansen would still not be entitled to a *Franks* hearing.

## V. ORDER

THE COURT HEREBY ORDERS:

1. The Motion for an Evidentiary Hearing and to Suppress (Dkt.36) is DENIED IN PART as it relates to Hansen's request for a *Franks* hearing.

2. The remainder of the Motion for an Evidentiary Hearing and to Suppress (Dkt. 36) remains under consideration. Any hearing set for this Motion may not include challenges to the veracity of the affidavit in support of the search warrant.

DATED: July 16, 2019

David C. Nye
Chief U.S. District Court Judge