# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID HANSEN,<br><br>Defendant. | Case No. 4:18-cr-00346-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is the Government's Motion to Quash Defendant's Rule 17 Subpoenas. Dkt. 75.[1]

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Government's Motion.

---

[1] Defendant David Hansen filed a companion motion (Dkt. 82 "Motion to Compel"), however, the briefing was completed in the Government's Motion. The Court will, therefore, only refer to Hansen's Motion as needed.

MEMORANDUM DECISION AND ORDER – 1

## II. BACKGROUND

Yellowstone Partners, LLC, ("Yellowstone") is an investment advisory firm located in Idaho Falls, Idaho. David Hansen was the owner and Chief Executive Officer of Yellowstone. The Government has charged Hansen with multiple counts of wire fraud and tax violations. Broadly speaking, the Government alleges that Hansen targeted certain Yellowstone clients in a vast overbilling scheme.

During the pendency of this litigation, Hansen has frequently argued that he is entitled to know the "search terms" and "filters" employed (primarily) by FBI Special Agent Drew McCandless ("SA McCandless") to search the electronically-stored information ("ESI") seized from Yellowstone. Additionally, Hansen requests the Special Agent Report ("SAR") of IRS-Criminal Investigation Special Agent Melissa Ripley ("SA Ripley"). The Government has maintained—and put Hansen on notice as early as February 2019—that it considers this information to be privileged and/or not discoverable.

In preparation for the (then scheduled) suppression hearing, Hansen issued Rule 17(c) subpoenas to SA McCandless and SA Ripley requesting, among other things, the above-mentioned items. The Government moved to quash the subpoenas.

## III. LEGAL STANDARD

Federal Rule of Criminal Procedure 16 provides, in part, that:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [the Jencks Act].

Fed. R. Crim. P. 16(a)(2). This rule is commonly referred to as the government's "work product" rule. *See United States v. Fort*, 472 F.3d 1106, 1115 (9th Cir. 2007) (citing cases). The rule not only protects the "the mental impressions, conclusions, opinions, or legal theories of the attorney for the government or other government agents," but also all "reports, memoranda, or other internal government documents." *Id.* (citing Fed. R. Crim. P. 16 (1975 enactment) Advisory Committee's Note D).

Under Federal Rule of Criminal Procedure 17(c), a subpoena may order a witness to produce books, papers, documents, data, or other objects. Fed. R. Crim. P. 17(c)(1). This rule, however, does not expand discovery beyond the dictates of Rule 16. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951) ("Rule 17(c) was not intended to provide an additional means of discovery . . . . It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest sense."). Indeed, a motion to compel production made pursuant to Rule 16 is the exclusive mechanism for a defendant to discover from the government documents and objects "material to the defense." *See* Fed. R. Crim. P. Rule 16(a)(1)(E)(i) and (d).

The party issuing the Rule 17(c) subpoena must demonstrate that:

(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). The decision whether to enforce a

subpoena is left to the district court's discretion. *Nixon*, 418 U.S. at 702 ("Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues.").

A court may quash or modify a criminal defendant's Rule 17 subpoena if compliance would be unreasonable or oppressive. *See* Fed. R. Crim. P. 17(c)(2). Further, Rule 17(c) subpoenas may not be used to obtain the "statement of a witness or of a prospective witness" before they have testified, also known as Jencks Act materials. Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule.").

### IV. ANALYSIS

In its Motion, the Government requests three things: first, that the Court quash the Rule 17 subpoenas; second, that the Court limit inquiry into certain topics at the suppression hearing; and third, that the suppression hearing *not* be continued.

The Government's third request is moot as the Court has already moved the date of the suppression hearing. The Government's second request is somewhat convoluted, and the Court will discuss it in greater detail below. The Court begins, however, with the most relevant issue: the Rule 17 subpoenas.

A. Subpoenas

Throughout this case, both parties have discussed the search terms and filters utilized by agents analyzing ESI seized from Yellowstone.

On July 18, 2019, as part of a "Status Notice," the Government explained that it

would not turn over this information and, furthermore, that testimony at the Motion to Suppress hearing from SA McCandless and SA Ripley was unnecessary. During the actual status conference on July 19, 2019, Hansen made clear he intended to question SA McCandless and SA Ripley on these topics. Subsequently, on July 23, 2019, Hansen issued Rule 17 subpoenas to SA McCandless and SA Ripley requesting these, and other, items. The Government moved to quash the subpoenas arguing that the information sought was irrelevant, or alternatively, privileged and protected from disclosure. The Court will address each argument in turn.

Initially, though, the Court must address two supplemental issues.

First, in its moving papers, the Government criticizes Hansen, claiming that the proper avenue for seeking this information is a Motion to Compel rather than Rule 17 subpoenas. Accordingly, Hansen filed a Motion to Compel (Dkt. 82) incorporating his argument and analysis contained in his Response to the Government's Motion to Quash. No response or reply briefs were filed in that motion (by design).

Second, Hansen criticizes the Government for not submitting the disputed materials to the Court for an *in camera* inspection and review. Accordingly, in replying to its Motion to Suppress, the Government submitted the search terms for all searches conducted using the FBI's review software. Dkt. 83, exhibit G (submitted *in camera* via email). The Court has reviewed the *in camera* submissions and will address them below.

1. Relevance

First, the Government contends that the information Hansen seeks via his subpoenas is irrelevant to his motion to suppress. Hansen counters that the evidence is most certainly

relevant because without it, he—and the Court—cannot know what evidence falls beyond the scope of the warrant. Furthermore, Hansen posits that this evidence will reveal that agents conducted an impermissible general search. Specifically, Hansen believes that SA McCandless and SA Ripley searched Yellowstone ESI for "evidence of tax violations that are not the subject of the warrant." Dkt. 81, at 7.

At the outset, the Court notes that Hansen's whole argument rests on shaky ground. On November 4, 2016, United States Magistrate Judge Ronald E. Bush issued a search warrant authorizing the search of Yellowstone. Attachment B to the warrant defined the scope of the permissible search as follows:

> 1. All records relating to violations of 18 U.S.C. § 1343 Wire Fraud, 18 U.S.C. § 1956 Money Laundering, and 18 U.S.C. § 1957 Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity . . . .

Dkt. 75-1, at 5. Additionally, Attachment B specified that agents could seize:

> c. *All records*, documents, materials, notes, and communications pertaining to the collection and expenditure of annual, semiannual, management and planning fees or any other expense or fee charged to an investor account.
>
> f. *Accounting records and other financial records* for Yellowstone and any related limited liability companies. Records include Financial Statements, General Ledgers, General Journal, Subsidiary Ledgers and Journals, Cash Receipts and Disbursement records and/or sales and purchase records and/or Payable Ledgers, check registers and/or copies of checks and *tax records including supporting schedules*.

*Id.* at 5-6 (emphasis added). Here, Hansen continues to speculate and argue that agents went wildly out of their way to find evidence of tax offenses, thus engaging in a general, exploratory search that exceeded the four corners of the warrant.

First, as indicated in the attachment, agents were well within the scope of the warrant

to search for *all* accounting records, financial records, *and tax records*. The fact that those searches (authorized in subsection "f") revealed crimes not specifically enumerated in Section "1" of the warrant is of little consequence on account of these crimes interrelated nature.

The cases Hansen cites as examples of searches that exceeded the scope of a warrant are easily distinguishable. For instance, *Carey* addressed a situation in which the investigative agent seized child pornography though the warrant restricted the search to evidence "pertaining to the sale and distribution of controlled substances." *Carey*, 172 F.3d at 1273. Child pornography crimes are clearly distinct from drug crimes.

Similarly, in *United States v. Wey*, 256 F. Supp. 3d 355 (S.D.N.Y. 2017), the warrant did not identify the crimes under investigation thereby limiting the Government's search. *Id.* at 410. Specifically, in that case the Court found as impermissible the Government's search for evidence of an "'alternative' charging theory not discussed in the Affidavits, … and never presented to a judge." *Id.* at 376. On top of that, the agents in *Wey* used search terms to re-review materials "*already sorted out as impertinent* two years earlier." *Id.* at 406 (emphasis in original). Here, tax crimes were not an "alternative charging theory" but part and parcel to the warrant for evidence of Wire Fraud, Money Laundering, and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity. *Wey* is not persuasive.

Finally, Hansen consistently relies on *United States v. Rettig*, 589 F.2d 418 (9th Cir 1978), alleging that when a search is conducted in an effort to obtain information beyond the warrant's scope, the search must be invalidated in its entirety, and all evidence seized

as a result suppressed. Taking aside the fact that complete suppression is the exception, rather than the rule—and that *Rettig's* admonition concerning the invalidity of evidence seized beyond the warrant's scope does not contradict the Court's holding here because "tax records" where within the confines of the search in this case—the general facts of that case are inapposite.

In *Rettig*, agents actively searched for evidence not authorized under the warrant— evidence which, in fact, they had previously been denied a warrant for. The Ninth Circuit found that that "the agents did not confine their search in good faith to the objects of the warrant, and that while purporting to execute it, they substantially exceeded any reasonable interpretation of its provisions." *Id.* at 423. The Court found that the warrant "became an instrument for conducting a general search" because it was "not possible for the court to identify after the fact the discrete items of evidence which would have been discovered had the agents kept their search within the bounds permitted by the warrant." *Id.*

Hansen's case, however, is far more akin to *United States v. Johnston*, 789 F.3d 934 (9th Cir. 2015) than to *Carey, Wey,* or *Rettig*. In *Johnston*, the warrant authorized the Government to search a "computer for child pornography, sexual activity with children, and the production, distribution, possession, or receipt of child pornography." *Id.* at 941. During the third search phase, the agent's "efforts turned up evidence about [the defendant's] travels abroad for the purpose of having sex with minors." *Id.* at 942. The Ninth Circuit distinguished this from *Carey*, emphasizing that in *Carey* the agent "'abandoned' his search for drug evidence and started an entirely new, warrantless search." *Id.* The Court contrasted that to the search in *Johnston*:

> [T]he plain language of the warrant authorized the government to search not only for child pornography, but also evidence of sexual activity with children, correspondence related to child pornography, and "items which evidence ownership or use of computer equipment found in the . . . residence." Each of the search methods [the agent] employed related directly to this mandate. Nothing suggests that [the agent] directed his search efforts towards anything other than child pornography, sexual activity with children, and [the defendant's] ownership and control over the computer. He was not digging around in unrelated files or locations that might have prompted the need for a second warrant. [The agent's] discovery of evidence of additional crimes is a reflection of the practical reality that [the defendant's] statements about child pornography were intermingled with chats about foreign trips for the purpose of having sex with minors and discussion about buying a camera to produce explicit images of children.

*Id.* at 942–43.

Here, we have a similar situation. The agents did not "abandon" their search or actively search for evidence not authorized by the warrant. Simply put, there is significant overlap between evidence of wire fraud, money laundering, and prohibited monetary transactions offenses—which were specifically enumerated in the search warrant—and evidence of tax violations. To hide the proceeds of the fraud for example, Hansen allegedly failed to accurately report Yellowstone's income to the IRS. The two types of offenses are intermingled.

Independently, it is only in very limited circumstances (none of which apply here) that the Government is required to turn over the search terms and filters it used to analyzed ESI. Accordingly, even if an argument could be made that the search was outside the warrant's parameters, that alone would not allow Hansen to prevail as this type of information is generally not subject to disclosure.

In *United States v. Jack*, the defendants sought "a detailed summary of the government's search methodology, including the key words, phrases and search terms utilized by the government, in culling through the stored information." 2009 WL 453051, at *5 (E.D. Cal. 2009). The Court denied the motion because the search terms were "not material" since the "executing agents . . . were authorized to open and briefly examine each file to determine those described by the warrant." *Id.*[2]

In *United States v. Western Titanium, Inc.*, the defendants likewise argued that the search terms were improper, and that the files returned by the searches were outside the warrant's scope. *United States v. Western Titanium, Inc.*, 2010 U.S. Dist. LEXIS 79508, at *35 (C.D. Cal. 2010). The Court disagreed. *Id.* It would not "consider these electronic files to be . . . documents allegedly seized outside the scope of the warrant" because the defendants failed to identify what specific documents fell "outside the scope of the search warrant stemming from the allegedly improper use of search terms." *Id.*[3]

Furthermore, courts have found that specific search protocols are not necessary. *See*,

---

[2] Interestingly, Hansen argues that the *Jacks* holding supports his position. In *Jacks*, the Court held that "so long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence." *Jack*, 2009 WL 453051, at *4. Hansen goes on to state that since he has "already made a substantial showing that the agents have exceeded the warrant's authorization" *Jacks* is inapplicable. To the contrary, Hansen has not made such a showing and *Jacks* is squarely on point. That is exactly what happened in this case—officers opened the various types of files located in the computer's hard drive in order to determine whether they contained evidence of the crimes listed in the warrant. In doing so, they found evidence of related crimes.

[3] Critically, Hansen has not pointed to any specific document that falls outside the scope of the warrant, arguing more broadly that any and all evidence of the (later-charged) tax offenses is impermissible. Absent specific examples, however, the Court cannot accept Hansen's blanket allegation when the warrant authorizes the seizure of "tax records." Furthermore, Hansen has provided no evidence that suggests the agents were even specifically looking for evidence of tax violations as opposed to the more obvious conclusion that they stumbled upon in in the execution of their lawful search of "all" financial records, including "tax records."

*e.g.*, *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1180 (9th Cir. 2010) (Kozinski, C.J., concurring) (recommending, not mandating, certain search protocols for ESI warrants); *United States v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005) ("This court has never required warrants to contain a particularized computer search strategy."); *United States v. Blake*, 2010 WL 702958, *4 (E.D. Cal. 2010) ("There is no legal requirement that a search warrant include a specification of the precise manner in which the search is to be executed.").

Hansen sole case in support of his position is *United States v. Cadden*, 2015 WL 5737144 (D. Mass. 2015), where that Court did, in fact, order the Government to disclose search terms. However, *Cadden* is distinguishable because the question in that case was whether the Government's disclosure of a set of emails met the Government's discovery obligations, not whether the search was reasonable. *Id.* at *2. The court held that "the search terms used by the government to capture the 1.1 million emails . . . it ha[d] produced to defendants" were the only "means by which to test the inclusiveness of the government's selection of the material that it produced." *Id.* Thus, the court reasoned that the defendants, without the search terms, "ha[d] no other means by which to test the inclusiveness of the government's selection of the material that it produced pursuant to its obligations under Fed. R. Crim. P. 16(a)(1)(E)." *Id*. By contrast, here, the Government has produced all ESI obtained from the search at Yellowstone and also identified the documents "seized" during the searches. Unlike in *Cadden,* Defendant can easily discern the scope of the search.

The search terms are, however, ultimately immaterial to the Court's analysis of whether the search exceeded the scope of the warrant. Reacting to Hansen's criticism that

it had not even turned over the materials at issue to the Court for an *in camera* inspection, the Government did just that. The Court has reviewed the submissions and finds that they do not reveal any impropriety on SA McCandless and SA Ripley's part. To wit, the listed search terms are not indicative of any impermissible, or overboard searches.

Though Hansen might still be unsatisfied—despite the Court's in camera review—there is no question that the search terms utilized by the Government were entirely proper. Additionally, as will be explained in the following section, the Court deems this information to be protected work product not subject to disclosure.

2. Privileged/Protected

Along with the contested information's general inclusion in the warrant—and the Court's decision regarding its immateriality as applied to the Motion to Suppress—the Government argues that the information is privileged work product not subject to disclosure.

As mentioned, Federal Rule of Criminal Procedure 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). The work product of prosecutors also extends to federal law enforcement agents working on the case:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for

the attorney as well as those prepared by the attorney himself.

*United States v. Fort,* 472 F.3d 1106, 1116 (9th Cir. 2007) (citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (applying work product rule to criminal cases)); *see also, Nobles*, 422 U.S. at 238–39 (because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," "[i]t is . . . necessary that the [work product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself").

Hansen rejects this argument contesting that SA McCandless and SA Ripley were not acting as the Government's agents when they were conducting the searches. He cites *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419 (D.D.C. 2014), for support which explains that:

> As an initial matter, all of the interview memoranda at issue appear to have been prepared by law enforcement agents rather than attorneys. While the Government correctly notes that the work-product doctrine also "protect[s] material prepared by agents for the attorney," *United States v. Nobles*, 422 U.S. 225, 238-39, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975), it is not necessarily the case that when a law enforcement agent conducts a witness interview as part of a criminal investigation, he does so as an agent of a Government attorney. Law enforcement agencies have an independent mission to investigate potential criminal offenses, which they routinely pursue without supervision or even involvement by Government attorneys. Accordingly, to the extent the memoranda here were not prepared by individuals acting as "agents" of the criminal prosecutors or civil lawyers involved in the case, they are not entitled to attorney work-product protection.

*Id.* at 424. This case is distinguishable as witness interviews are not at issue here; investigatory search terms are. More critically, however, is the fact that SA McCandless and SA Ripley were acting as government agents in conjunction with government attorneys. Their involvement in this case was not independent of the existing criminal

investigation and prosecution of Hansen. Thus, the Court finds that the search terms and filters are privileged under the work product doctrine.

This finding extends to these agent's communications (with each other and/or government attorneys), and SA Ripley's SAR report as well. Broadly speaking, all of these materials contain internal communications, decisions, findings, and recommendations prepared in conjunction with the investigation and prosecution of this case. Furthermore, each is irrelevant to Hansen's Motion to Suppress. All that is relevant is whether the documents seized objectively fall within the categories of "records relating to violations" of wire fraud, money laundering, or engaging in monetary transactions in property derived from specified unlawful activity, including the specific items listed in Attachment B, such as "tax records." The Court, however, will briefly address each in turn.

  i. SAR

The SAR, including its schedules and attachments, qualifies as "internal government document[s] made by. . . [a] government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).

Because its disclosure would reveal the agent's mental process in evaluating the strengths and weaknesses of the investigation and prosecution, it is protected from disclosure. *See United States v. Jensen*, No. 3:09–cr–108–JWS–JDR, 2011 WL 1302908, at *11 (D. Alaska Apr. 5, 2011) ("Not all government agent reports are discoverable under Federal Criminal Rule 16. An agent's evaluation of a case is his work product and not discoverable unless it specifically falls under Rule 16, the Jencks Act, or Brady/Giglio material. This includes special agent reports . . . ."); *All Assets Held at Bank Julius Baer &*

*Company, Ltd.*, 169 F. Supp. 3d 54, 59 (D.D.C. 2015) (finding SAR entitled to work-product protection).

    ii.    Agent Communications

Other relevant communications likewise are not discoverable. While the parties discuss whether emails are communications under the Jencks Act or Federal Rule of Criminal Procedure 26.2, Hansen explains that he is not yet seeking the production of these emails, but simply subpoenaed them believing them to be relevant to the Court's determination on the Motion to Suppress. Accordingly, the Court will not make a formal ruling as to whether emails are subject to disclosure under the Jencks Act, Brady, Rule 16 or Rule 26, but finds that, for purposes of the suppression hearing, they are protected, immaterial, and need not be produced under subpoena.

In this case, the Government has disclosed a great deal about the timing, scope, and processes surrounding its ESI searches. As the Court has already explained, however, the communications *regarding* those processes are protected under Rule 16. *See S.E.C. v. Reyes*, No. C 06-04435 CRB, 2007 WL 528718, at *4 (N.D. Cal. Feb. 13, 2007) (stating what while a defendant is "entitled to all exculpatory evidence," he is not "entitled to have any document revealing what [government attorneys] *think* about such evidence"); *United States v. Jack*, 263 F.R.D. 640, 646 (E.D. Cal. 2010) (citing Rule 16(a)(2) in finding that "internal communications between government agencies regarding this investigation . . . are not subject to discovery").

In summary, the Court finds that the information sought by Hansen via his Rule 17 subpoenas—and in his subsequently filed Motion to Compel (Dkt. 82)—is not indicative

of agents exceeding the scope of the warrant, is irrelevant, and is otherwise protected work product. Accordingly, the Government's Motion to Quash is GRANTED as it relates to this request. Hansen's Motion to Compel the same is DENIED.

B. Inquiry at Suppression Hearing

Finally, the Government contends that "the Court should preclude inquiry by Defendant at the suppression hearing into irrelevant and privileged topics, including the agents' subjective views as to how and why they conducted searches." Dkt. 75, at 2.

As a threshold matter, both sides continue to slightly misconstrue the Court's prior ruling as it relates to the scope of the upcoming suppression hearing. Each opines that the Court has already ruled in their respective favor more so than it actually did.

For example, the Government continues to contend that the Court has "rejected arguments in Headings I and II of his [Hansen's] Motion [to suppress]." Dkt. 75, at 5. While this is, generally speaking, correct, the Court's prior decision did not distinguish between *sections* in Hansen's Motion, but *subject matter*. The Court held that Hansen was not entitled to a *Franks* hearing and that he could not challenge the veracity of the affidavit in support of the search warrant. Dkt. 65, at 13. This is an important distinction because the Court has not ruled on certain topics discussed under Headings I and II of Hansen's Motion.[4]

Similarly, Hansen claims that "the Court [] has also held that it would further

---

[4] As just one example, in Section II (C) of Hansen's Motion, he raises arguments about which rooms or locations agents searched at Yellowstone. Again, while he cannot challenge the affidavit is support of the warrant on this issue (and in general) this topic is intertwined with his "scope" argument found in Section III.

MEMORANDUM DECISION AND ORDER – 16

consider Mr. Hansen's claim that the warrant, as issued, was overbroad." Dkt. 81, at 7; Dkt. 68, at 2, n.1. The Court does not know where it so held.[5] Also, Hansen claims that he has "already made a substantial showing that the agents have exceeded the warrant's authorization," (Dkt. 81, at 2) and have "already made a substantial showing that the government's agents searched the Yellowstone ESI for tax violations outside of the warrant's scope" (Dkt. 81, at 11). Both statements are Hansen's opinion, not rulings of the Court. The second opinion in particular is false, in light of today's opinion.

In short, the parties should read the Court's prior order regarding the *Franks* hearing—as well as today's order—pragmatically and accurately, without interjecting their subjective positions into what the Court did, or did not, actually determine.

The Court returns, however, to the specific request that Defendant should be precluded from questioning the agents about their subjective views of their searches. Under the circumstances, the Court must agree. Consistent with the above analysis, these specific topics are irrelevant and/or privileged. The Court will not allow Hansen to inquiry on the same. Hansen can question agents regarded what, when, and how they performed their tasks, but not why they (subjectively) did them.[6]

That said, the Court cannot wholesale preclude "irrelevant topics" because relevance is subjective. Each party will adhere to the Court's prior orders and each party

---

[5] Furthermore, unless Hansen is referring colloquially to the concept of "overbroad," he never actually argues or briefs an overbroad argument in his motion to suppress. The sole passing reference—that "the warrant was also overbroad"—is in his conclusion and lacks any analysis.

[6] Hansen argues that "clearly it would be relevant to determine whether the agents exceeding their authorization to search the ESI [in this case]" Dkt. 81, at 20. If this argument ever held any sway, it is further diminished now that the Court has reviewed the search terms *in camera* and finds they are irrelevant and do not indicate any excess of authorization on the agents' parts.

will have the right (at the hearing) to object to any line of questioning it deems irrelevant—or that it perceives is in violation of any holding by the Court.

Accordingly, the Government's Motion is GRANTED in PART and DENIED in PART as it relates to these topics.

Finally, the Court is fully aware that via these "pre-hearing" orders (such as this decision and its *Franks* decision), it has limited and narrowed the scope of Hansen's suppression motion—to the point that today it specifically rules that there is no evidence to support the contention that searches resulting in evidence of tax violations exceeded the scope of the warrant (as they were including within the confines of the warrant itself, and further, that based on the Court's *in camera* review there is no evidence the agents specifically searched for these violations).

While some of these topics would have assuredly come up during the Motion to Suppress hearing, the Court has had to rule on them prior to that point in order to aid the parties in their preparation for those issues, to narrow and clarify the subjects the Court is concerned with, and to avoid inconsistent or duplicative results and rulings. *Broadly speaking*,[7] the Court is of the opinion that the remaining topics left for the suppression hearing relate to standing (and whether additional evidence of such can be raised at this

---

[7] As already explained, the Court has not so much dictated what is *still* viable for the Motion to Suppress hearing, but rather what is not. The Court has ruled there will be no *Franks* hearing, no challenges to the veracity of the affidavit in support of the search warrant, no challenges to search terms or filters, and no inquiry into agent's subjective intent. Other than that, Hansen can argue the remaining portions of his Motion to Suppress.

point), the inevitable discovery doctrine, probable cause,[8] and reasonable execution (scope and timing) of the warrant. Again, the Court stresses that the above is not an exhaustive list, however, since there has been some confusion on what can, or cannot, be discussed at the hearing, the Court wishes to provide some guidance.

Furthermore, the Government recently filed a "Notice of Intent to Continue Search of ESI." Dkt. 88. The Court will not delve into the substance of that Notice at this time, but notes that the Government represents it "will wait until after the suppression hearing to conduct this [subsequent] search, so that Defendant may be heard on this issue at the hearing." *Id. at 2.* Both parties should be prepared to address these matters as well.

## V. ORDER

**THE COURT HEREBY ORDERS:**

1. The Government's Motion to Quash Defendant's Rule 17 Subpoenas (Dkt. 75) is GRANTED in PART and DENIED in PART as outlined above.
2. Hansen's Motion to Compel (Dkt. 82) is DENIED.

DATED: September 13, 2019

David C. Nye
Chief U.S. District Court Judge

---

[8] In the Court's Memorandum Decision and Order on the *Franks* hearing (Dkt. 65), the Court ruled that even if the warrant affidavit were changed as Hansen desired, there would still be probable cause. Accordingly, it is extremely unlikely that Hansen can succeed with an argument that the actual affidavit lacked probable cause. However, because the Court did not officially rule on this, Hansen may still argue it did not if he so desires. That said, during a status conference, Hansen suggested that he will not pursue this type of argument.