UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID HANSEN,<br><br>Defendant. | Case No. 4:18-cr-00346-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is David Hansen's Motion for a Protective Order (Dkts. 101, 103)[1] and Motion to Seal Filings in Support of Motion for Protective Order (Dkt. 102). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons set forth below, the Court DENIES Hansen's Motion.

# II. BACKGROUND

Yellowstone Partners, LLC, ("Yellowstone") is an investment advisory firm located

---

[1] Hansen filed his motion in two parts. The Government can view the first part (Dkt. 101), but Hansen filed the second part of his motion *ex parte* (Dkt. 103).

in Idaho Falls, Idaho. David Hansen was the owner and Chief Executive Officer of Yellowstone. The Government has charged Hansen with multiple counts of wire fraud and tax violations. Broadly speaking, the Government alleges that Hansen targeted certain Yellowstone clients in a vast overbilling scheme.

To protect any privileged documents in discovery, the Government used a taint review process. The Court thoroughly explained this process in a previous order (Dkt. 49) and incorporates that explanation by reference here. To summarize, tens of thousands of electronic documents were reviewed for privileged information in steps by a filter team, an AUSA, and Hansen's counsel. After the taint review process, roughly 4,668 documents were provided to the prosecution as "non-privileged."

Beginning in February 2017, the Government conducted key word searches of the "non-privileged" ESI. Among other things, these searches revealed allegedly fraudulent billing spreadsheets. Approximately fifteen (15) of these spreadsheets (the "Spreadsheets") were stored on Hansen's desktop computer in a folder labeled "Attorney Client workfile,"[2] as well as in other locations. At the time, however, the electronic location of the "non-privileged" ESI—including the Spreadsheets—was unknown to both the prosecution team and defense counsel. In other words, the prosecution team could view the Spreadsheets themselves, but did not know if they came from the "Attorney Client workfile" folder or some other folder. All the prosecution team knew was that the Spreadsheets came from

---

[2] Hansen states he intended to discuss the contents of this folder with an attorney, but never alleges that he transmitted this folder to or discussed this folder with his attorney.

Hansen's computer.[3]

In August 2019—after multiple requests from Hansen—the Government prepared a list of native file paths for the documents seized from its search. It was at this time that both the prosecution and Hansen's counsel realized these fifteen spreadsheets had been stored in the "Attorney Client workfile" folder. The Government responded by filing a Notice of Intent to Continue Search of Electronically Stored Information. Dkt. 88. Based on the nature of the Spreadsheets and the folder Hansen stored them in, the Government believes Hansen is hiding other inculpatory evidence in his "Attorney Client workfile" folder and wants to search the 250 documents stored in that folder.

Hansen responded quite differently. He contends that the Government impermissibly reviewed the documents contained in the "Attorney Client workfile" folder, which constitutes a breach of the attorney-client privilege. Based upon this belief, Hansen now seeks to prevent the Government from searching the contents of the "Attorney Client workfile" folder.

### III. LEGAL STANDARD

Rule 16(d)(1) "Protective and Modifying Orders" provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The "language of Rule 16(d)(1) . . . appears to focus on enforcing the mandatory disclosure provisions of Rule 16 itself." *U.S. v. Grace*,

---

[3] Hansen alleges there is an additional document taken from a folder labeled "Attorney file – Work Product" that was located on Yellowstone's server. As the Government has indicated it is not pursuing a search of that particular folder, but only the "Attorney Client workfile" folder, the Court will refer to only the Spreadsheets located on Hansen's computer.

526 F.3d 499, 511 (9th Cir. 2008).

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Ruehle,* 583 F.3d 600, 607 (9th Cir. 2009). The burden lies with the party claiming the privilege to prove the existence of the privilege. *Id.* Generally speaking, a client cannot transform an otherwise unprivileged document into a privileged document simply by transferring it to his attorney. *See Fisher v. United States*, 425 U.S. 391, 403–04 (1976).

### IV. ANALYSIS

#### A. Protective Order

To begin, the Court notes the odd position it finds itself in. Hansen filed the instant motion in two separate parts. The first part includes the factual background and the argument that the Court should prevent the Government from searching Hansen's "Attorney Client workfile" folder because it violates the attorney-client privilege. Dkt. 101. This part of the motion is available for the Government to review. However, Hansen's reasons for *how* and *why* the Government's search would violate the attorney client privilege are contained in the second part of his motion, which was filed *ex parte*. Dkt. 103.

The Court appreciates Hansen's desire to maintain his attorney-client privilege, but this presents a sticky situation. Initially, as with any *ex parte* filing, the opposing side—in this case, the Government—is somewhat at a disadvantage; it knows that Hansen is attempting to invoke the attorney-client privilege, but it does not know the claimed basis for that privilege. This obviously limits the Government and forces it to defend a very broad, general claim. Further, the Court is likewise limited in how it can explain its decision

regarding this motion. There is simply no possible way the Court can provide explanation or analysis without revealing the information that Hansen seeks to protect.

With these limitations in mind, the Court's decision today resolves these concerns—at least for the time being. After thoroughly reviewing both portions of Hansen's motion and his supporting authority, the Court finds Hansen's arguments that the documents contained in the "Attorney Client workfile" folder should enjoy protection under the attorney-client privilege unpersuasive and inapplicable in this case. For now, as explained above, it is sufficient to state there is no attorney-client privilege without further explanation.

In this decision, it is important to note the distinction between the substance of the claim in Hansen's *ex parte* portion and the nature of the *ex parte* designation itself. Based on its finding that there is no attorney-client privilege preventing the Government from searching the "Attorney Client workfolder," the Court is able to—and does, for that matter—rule on the former without directly addressing the latter. Put differently, the Court finds there is no attorney-client privilege—which addresses the substance of Hansen's *ex parte* portion. However, at this juncture the Court is not comfortable with disclosing Hansen's *ex parte* arguments because doing so might be unfairly prejudicial for reasons other than the attorney-client privilege. Further, this decision does not prejudice the Government because the Court has ruled in its favor, *i.e.* the Court is not preventing the Government form searching the "Attorney Client workfile" folder. As such, despite there being no attorney-client privilege, the Court GRANTS Hansen's Motion to Seal Filings in

Support of Motion for Protective Order at this time. [4]

As there is no applicable attorney-client privilege, Hansen has not convinced the Court there is anything preventing the Government from searching the contents of Hansen's "Attorney Client workfile" folder. Thus, the Government may search Hansen's "Attorney Client workfile" folder. In doing so, the Government must adhere to the taint review process it previously utilized to protect any documents that may be privileged.

**B. Order in Limine**

Hansen also asks the Court to issue an order *in limine* preventing the Government from disclosing to the jury the fact that the Spreadsheets were located in a folder labeled "Attorney Client workfile." The Government disagrees, noting that this is circumstantial evidence of Hansen's intent to defraud, but urges that a motion for a protective order is not the proper vehicle to address this concern.

The Court agrees with the Government. The decision to prevent or allow the Government to present this evidence at trial is a substantial one. Were the Court to make that decision at this time, without adequate briefing, it would run the risk of making an erroneous decision. If Hansen feels the Court should exclude this evidence at trial, he should make the necessary motion in limine so that the issue can be properly briefed.

///
///
///

---

[4] The Court recognizes that the issue of Hansen's *ex parte* filing may arise again. Because different circumstances naturally warrant a different analysis, either Hansen or the Government may again raise the appropriateness of this *ex parte* designation in a future motion.

# V. ORDER

**THE COURT HEREBY ORDERS:**

1. Hansen's Motion for a Protective Order (Dkt. 101, 103) is DENIED.

2. Hansen's Motion to Seal Filing in Support of Motion for Protective Order (Dkt. 102) is GRANTED.

DATED: November 18, 2019

_____
David C. Nye
Chief U.S. District Court Judge