BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
RAYMOND E. PATRICCO, DISTRICT OF COLUMBIA STATE BAR NO. 454792
ASSISTANTS UNITED STATES ATTORNEY
DISTRICT OF IDAHO
WASHINGTON GROUP PLAZA IV
800 EAST PARK BOULEVARD, SUITE 600
BOISE, ID 83712-7788
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-9375

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID HANSEN,<br><br>    Defendant. | Case No. 4:18-cr-00346-DCN<br><br>**RULE 11 PLEA AGREEMENT** |

## I. GUILTY PLEA

**A.** **Summary of Terms.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A) and (B), the Defendant, the attorney for the defendant, and the Government[1] agree that the Defendant will plead guilty to Count 16 of the Superseding Indictment, which charges the Defendant with wire fraud, in violation of 18 U.S.C. § 1343.

This plea is voluntary and did not result from force, threats, or promises, other than any promise made in this agreement. Upon acceptance of the defendant's guilty plea, and the Defendant's full compliance with the other terms of this agreement, the Government, will dismiss, under Federal Rule of Criminal Procedure 11(c)(1)(A), Counts 1 through 15 and Counts 17 through 29 of the Superseding Indictment and under Federal Rules of Criminal Procedure 11(c)(1)(B), and will recommend a sentence within the guidelines range to which the parties have agreed in Section V.B.4. below.

**B.** **Oath.** The Defendant will be placed under oath at the plea hearing. The Government may use any statement that the defendant makes under oath against the Defendant in a prosecution for perjury or false statement.

## II. WAIVER OF CONSTITUTIONAL RIGHTS AT TRIAL

The Defendant waives the following rights by pleading guilty pursuant to this agreement: 1) the right to plead not guilty to the offense(s) charged against the Defendant and to persist in that plea; 2) the right to a trial by jury, at which the Defendant would be presumed innocent and the burden would be on the Government to prove the Defendant's guilt beyond a reasonable doubt; 3) the right to have the jury agree unanimously that the Defendant was guilty of the offense; 4) the right, at trial, to confront and cross-examine adverse witnesses; 5) the right to

---

[1] The word "Government" in this agreement refers to the United States Attorney for the District of Idaho, and does not include the Securities and Exchange Commission.

**Plea Agreement**          1          Rev. September 2019

present evidence and to compel the attendance of witnesses; and 6) the right not to testify or present evidence without having that held against the Defendant. If the Court accepts the Defendant's guilty plea, there will be no trial.

## III. NATURE OF THE CHARGES

**A.** **Elements of the Crime.** The elements of the crime of wire fraud, 18 U.S.C. § 1343, as charged in Count 16, are as follows:

1. First, the defendant knowingly participated in, devised, and intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

2. Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. Third, the defendant acted with the intent to defraud, that is, the intent to deceive or cheat; and

4. Fourth, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

**B.** **Factual Basis.** The Defendant admits the following facts are true:

From approximately 2008 through approximately April 2016, the Defendant was the Chief Executive Officer and a 90-percent partner in Yellowstone Partners, LLC, an investment management firm headquartered in Idaho Falls, Idaho. Clients of Yellowstone Partners entrusted their monies to Yellowstone Partners to invest and manage on their behalf. In exchange, Yellowstone Partners earned fees for its services. Yellowstone Partners' fees were set forth in investment agreements between Yellowstone Partners and its clients.

Yellowstone Partners' clients' monies were kept in accounts at third party custodians, including R.J. Yellowstone Partners directed how the monies in client accounts were invested and how they were disbursed. This included submitting email billing requests to the third party custodian to take fees from client accounts and to deposit them into Yellowstone Partners' own accounts.

From 2008 through April of 2016, the Defendant knowingly and intentionally devised a scheme to defraud clients of Yellowstone Partners by obtaining money or property by means of false and fraudulent pretenses, representations, and promises. Specifically, the scheme was to fraudulently bill clients for fees to which Yellowstone Partners was not entitled under the terms of the investment agreements or otherwise. Through this overbilling scheme, the Defendant fraudulently obtained client funds from third party custodian R.J. and used them to enrich himself and to fund Yellowstone Partners' operations. For certain identified victims, the Defendant personally submitted, or was carbon-copied, on 50 fraudulent overbilling requests to custodian R.J., which resulted in a loss of $2,675,856. For each of the overbillings, the Defendant acted with the intent to deceive or cheat the victims.

On or about June 19, 2013, in furtherance of the scheme to defraud, the Defendant personally submitted an interstate wire communication – specifically, an email billing request – to custodian R.J. In the spreadsheet attached to the email (entitled "June2013fees.xlsx"), the Defendant requested that custodian R.J. provide to Yellowstone Partners fees in the amount of $46,516 from the account of victim Dahle. These fees exceeded those permitted by the investor agreement. This resulted in an interstate wire transfer of $46,516 from custodian R.J. to Yellowstone Partners.

## IV. SENTENCING FACTORS

    A.    **Penalties.** The crime of wire fraud, as charged in Count 16, is punishable by:

    1.     a term of imprisonment of 20 years;

    2.     a term of supervised release of not more than 3 years;

    3.     a maximum fine of $250,000; and

    4.     a special assessment of $100.

**B.**     **Supervised Release.** The Court may impose a period of supervised release. No agreement exists as to its length.

The law permits the combined prison time and term of supervised release to exceed the maximum term of incarceration for the crime to which the Defendant is pleading guilty. Violation of any condition of supervised release may result in further penalties and prosecution.

**C.**     **Fines and Costs.** The Court may impose a fine. No agreement exists as to its amount of the fine. The Court may also order the Defendant to pay the costs of imprisonment, probation, and supervised release.

**D.**     **Special Assessment.** The Defendant will pay the special assessment(s) before sentencing and will furnish a receipt at sentencing. Payment will be made to:

> The United States District Court, Clerk's Office
> Federal Building and United States Courthouse
> 801 E. Sherman St., Room 119
> Pocatello, Idaho 83201

**E.**     **Restitution.** In addition to paying any forfeiture, fine, and costs imposed, the Defendant also agrees to pay restitution equal to the full amount of loss caused to any victim. The Defendant agrees to pay restitution in the sum determined by the Court at the time of sentencing.

The Defendant agrees that all monetary penalties imposed by the Court, including restitution, will be due immediately and can immediately be enforced by the Government (whether through 18 U.S.C. § 3613 or otherwise). The Defendant agrees that the payment schedule or plan is neither the only method, nor a limitation on the methods, available for enforcing the judgment. It is simply a schedule or plan for minimum payments. The Defendant is

aware that voluntary payment of restitution prior to adjudication of guilt is a factor the Court can consider if the Defendant has accepted responsibility under U.S.S.G. § 3E1.1.

  **F.**  **Forfeiture.** The Court will enter a forfeiture order as part of the Defendant's sentence.

    1.  The Defendant agrees to forfeit the following:

      a.  <u>Forfeiture Money Judgment for Unrecovered Property.</u> The Court may impose forfeiture of a monetary sum, or money judgment, equivalent to unrecovered property including unrecovered proceeds of the offense of conviction obtained and controlled by the Defendant, property derived from or traceable to such proceeds, and/or unrecovered property the Defendant used to commit or facilitate the offense, as authorized by applicable statutes. The parties agree to a forfeiture judgment in the amount of restitution ordered by the Court at the time of sentencing.

The Government agrees to apply for restoration of any amount recovered in forfeiture to be applied toward the restitution judgment in this case. The Government makes no promise regarding the result of that application. The defendant understands that while restoration is often approved, restoration is in the sole discretion of the Money Laundering Asset Recovery Section of the Department of Justice, which is separate from the United States Attorney's Office.

      b.  <u>Substitute Assets Up To the Value of Unrecovered Property Subject to Forfeiture.</u> Pursuant to 21 U.S.C. § 853(p) and other applicable statutes, the Defendant agrees to forfeit substitute assets, or any other property of the Defendant up to the value of any unrecovered property subject to forfeiture. Post-sentencing forfeiture of substitute assets does not entitle the Defendant to resentencing.

    2.  Defendant makes the following additional agreements and waivers related to forfeiture.

**Plea Agreement**              5                Rev. September 2019

    a. Forfeiture is separate from all other penalties, including fines and restitution. As with other penalties, the Court will determine forfeiture at sentencing.

    b. The District Court shall retain jurisdiction to consider and rule on forfeiture and related issues, unless a higher Court directs otherwise.

## V. UNITED STATES SENTENCING GUIDELINES

  A. **Application of Sentencing Guidelines.** The Court must consider the U.S.S.G. in determining an appropriate sentence under 18 U.S.C. § 3553. The defendant agrees that the Court may consider "relevant conduct" in determining a sentence pursuant to U.S.S.G. § 1B1.3.

  The Court is not a party to this agreement and the agreement does not bind the Court's determination of the U.S.S.G. range. The Court will identify the factors that will determine the sentencing range under the U.S.S.G. The Court has complete discretion to impose any lawful sentence, including the maximum sentence possible.

  Recognizing that this agreement does not bind the Court, the parties agree to the recommendations and requests set forth below.

  B. **Sentencing Guidelines Recommendations and Requests.**

    1. **Government's Statements at Sentencing.** The Government reserves the right to allocute fully at sentencing regarding any sentencing recommendation. The Government may rely on or submit any information, including relevant conduct, in support of its recommendation regardless of whether the agreement or the pre-sentence investigation report contain this information. Any exception must be specified in this agreement.

    2. **Acceptance of Responsibility.** If the Defendant clearly accepts responsibility for the offense, the Defendant will be entitled to a reduction of two levels in the combined adjusted offense level, under U.S.S.G. § 3E1.1(a). The Government will move for an additional one-level reduction in the combined offense level under § 3E1.1(b) if the following

conditions are met: (1) the Defendant qualifies for a decrease under § 3E1.1(a); (2) the offense is level 16 or greater; and (3) the Defendant has timely notified authorities of the Defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. If, before sentence is imposed, the Defendant fails to meet U.S.S.G. § 3E1.1's criteria, or acts in a manner inconsistent with acceptance of responsibility, the Government will withdraw or decline to make the motion.

3. **Amount of Loss.** The parties agree that the amount of loss for guidelines purposes is $2,675,856.

4. **Guidelines Calculations.** The parties agree that the following USSG calculations apply:

| | | | |
|---|---|---|---|
| a. | § 2B1.1(a)(1): Base Offense Level | | 7 |
| b. | § 2B1.1(b)(1)(I): More than $1,500,000 loss | | +16 |
| c. | § 2B1.1(b)(2)(A)(i): More than 10 victims | | +2 |
| d. | § 3B1.1(c): Organizer, leader, manager, supervisor | | +2 |
| e. | § 3B1.3: Abuse of position of private trust | | +2 |
| f. | <u>§ 3E1.1(a): Acceptance of Responsibility</u> | | <u>-3</u> |
| g. | Adjusted Offense Level | | = 26 |

The parties also agree that the two-level enhancement for sophisticated means in § 2B1.1(b)(10), the two-level enhancement for more than $1,000,000 in gross receipts from a financial institution in § 2B1.1(b)(16), the four-level enhancement for violation of securities laws in § 2B1.1(b)(19), and the two-level enhancement for vulnerable victims in § 3A1.1.(a) do not apply.

5. **Downward Departure or Variance Request by Defendant.** The defendant intends to seek a downward departure or variance under 18 U.S.C. § 3553(a). Not less

than 21 days before the date for sentencing, the defendant will notify the Government of the reasons and basis for the downward departure or variance.

## VI. PAYMENT OF TAXES OR COOPERATION IN TAX PROCEEDINGS

The defendant agrees either to pay unpaid tax due and owing, and accrued interest, consistent with paragraph A below or to cooperate in the civil examination, assessment, and collection of unpaid tax due and owing, penalties and interest as set forth in paragraph B below.

    A.    **Payment of Tax Due and Owing and Accrued Interest.** The defendant will pay any unpaid tax due and owing, and accrued interest for his 2012 and 2013 Form 1040 joint income tax returns prior to or at sentencing. The Government represents that it has consulted with the IRS and that the IRS has represented that, if the Government agrees that payment represents defendant's tax due and owing and accrued interest for his 2012 and 2013 Form 1040 joint income tax returns, the IRS will not pursue any further criminal or civil fraud investigation related to the defendant and his associated corporate entities for tax years 2012 and 2013.

    B.    **Cooperation in Tax Proceedings.** The defendant agrees to cooperate with the Internal Revenue Service ("IRS") in its civil examination, determination, assessment, and collection of income taxes relating to his tax returns and any related corporate/entity tax returns for tax years 2012 and 2013, and further agrees not to conceal, transfer, or dissipate funds or property that could be used to satisfy such taxes, penalties, and interest. The defendant agrees to provide the IRS any documentation in the defendant's possession and/or control requested by the IRS in connection with its civil examination, determination, assessment, and collection of such taxes prior to sentencing.

The defendant also agrees to work diligently with the IRS to resolve the liability for all taxes, interest, and penalties due and owing to the IRS, including all taxes, interest, and penalties on his individual and any related corporate/entity liabilities for the tax years 2012 and

2013. Nothing in this agreement shall limit the IRS in its civil determination, assessment, and collection of any taxes, interest, and/or penalties that the defendant may owe.

The defendant agrees to repatriate any funds or assets held in any foreign country or outside the United States as necessary to pay his tax liability and restitution.

The defendant agrees that the IRS may seek to impose penalties on any additional tax as identified by civil examination for tax years 2012 and 2013 under 26 U.S.C. § 6663. The defendant does not concede that such penalties apply.

The defendant agrees to sign statute extensions (Form 872) with the IRS, prior to the time of sentencing, for tax years 2012 and 2013, if requested.

The defendant agrees that nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest and/or penalties due from the defendant for the time periods not covered by this agreement.

The defendant agrees that nothing in this agreement shall preclude or bar the Internal Revenue Service from the assessment and/or collection of any additional tax liability, including interest and penalties, determined to be due and owing from the defendant by the Internal Revenue Service for 2012 and 2013.

The defendant agrees to give up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

The defendant agrees that any statements made by him to the IRS and/or in this Agreement shall be admissible against the defendant without any limitation in any civil proceeding and the defendant stipulates to the authenticity and admissibility, in any civil proceeding, of any documentation provided by the defendant to the IRS. The defendant hereby

waives any protection afforded by Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure with regard to any such statements and documentation. In the event that the defendant withdraws from this agreement prior to pleading guilty and/or fails to fully comply with any of the terms of this agreement, the United States will, at its option, be released from its obligations under this agreement, but under no circumstances shall the defendant be released from the agreements and waivers made by him in this and the preceding paragraphs.

## VII. WAIVER OF RIGHT TO DIRECT APPEAL AND TO COLLATERAL ATTACK UNDER 28 U.S.C. § 2255

A. **Waiver:** In exchange for this agreement, and except as provided in subparagraph B, the Defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution. This waiver includes any challenge to the constitutionality of any statute of conviction including arguments that the admitted conduct does not fall within any statute of conviction.

The Defendant acknowledges that this waiver will result in the dismissal of any direct appeal or collateral attack the Defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and allow the Government to withdraw from it, as well as to take other remedial action.

If the Defendant believes the Government has not fulfilled its obligations under this agreement, the Defendant will object at the time of sentencing; further objections are waived.

A. **Exceptions:**

1. **Direct Appeal:** Notwithstanding subparagraph A, the Defendant may file one direct appeal if one of the following unusual circumstances occurs:

    a. the sentence imposed by the Court exceeds the statutory maximum;

      b.      the Court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

      c.      the Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the Court.

The Defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

    2.    **Motion Under 28 U.S.C. § 2255:** Notwithstanding subparagraph A, the Defendant may file an ineffective assistance of counsel claim in a 28 U.S.C. § 2255 motion.

## VIII. PROVIDING INFORMATION FOR THE PRESENTENCE REPORT

The Defendant agrees to provide financial information and any other information requested by a representative of the United States probation office for use in preparing a pre-sentence investigation report, and agrees that the United States probation office may share all financial information with the Government. Failure to execute releases or to provide information for the pre-sentence investigation report violates this agreement and relieves the Government of its obligations from it. Such failure by the Defendant and response by the Government will not, however, constitute grounds for withdrawing the plea of guilty unless the Government so requests. Providing materially false information will subject the Defendant to additional penalties, including an enhancement under U.S.S.G. § 3C1.1.

## IX. DISCLOSING FINANCIAL INFORMATION

The Defendant agrees to disclose all the Defendant's assets and sources of income to the Government, including all assets over which the Defendant exercises or exercised direct or indirect control, or in which the Defendant has had any financial interest. This includes all community property. The Defendant also agrees to cooperate in obtaining any records relating to ownership of assets when sought by the Government. The Defendant agrees truthfully to complete a personal financial statement within 14 days from the date the Defendant signs this

agreement or from the date the financial statement is provided to the Defendant or counsel, whichever is later. The Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within 7 days of the event giving rise to the changed circumstances. The failure timely and accurately to complete, sign, and update the financial statements may constitute failure to accept responsibility under U.S.S.G. § 3E1.1, as well as other things.

The Defendant authorizes the Government: (a) to obtain a credit report on the Defendant; (b) to inspect and copy all financial documents and information held by the United States probation office; and (c) to obtain all financial records related to the Defendant.

Before sentencing, Defendant agrees not to dissipate any real or personal property assets without the consent of both the Government's financial litigation unit and asset forfeiture unit. If any assets are sold, any sale proceeds will be deposited with the Clerk of Court and, upon sentencing, paid toward any monetary penalties ordered in the judgment.

## X.  NO RIGHT TO WITHDRAW PLEA

The Defendant understands that the Court may not follow the recommendations or requests made by the parties at the time of sentencing. The Defendant cannot withdraw from this agreement or the guilty plea, regardless of the Court's actions.

## XI.  CONSEQUENCES OF VIOLATING AGREEMENT

**A.    Government's Options.** If the Defendant fails to keep any promise in this agreement or commits a new crime, the Government is relieved of any obligation: 1) to make a sentencing recommendation consistent with the terms promised in this agreement; and 2) not to prosecute the Defendant on other charges, including charges not pursued due to this agreement. Such charges may be brought without prior notice. If the Government determines that a breach warrants prosecution before sentencing, it may withdraw from this agreement in its entirety. In

addition, if the Government determines after sentence is imposed that the Defendant's breach of the agreement warrants further prosecution, the Government may choose between letting the conviction(s) under this agreement stand or vacating such conviction(s) so that charge(s) may be re-prosecuted.

The Government's election to pursue any of the above options provides no basis for the Defendant to withdraw the guilty plea made pursuant to this agreement.

**B.** **Defendant's Waiver of Rights.** If the Defendant fails to keep any promise made in this agreement, the Defendant gives up the right not to be placed twice in jeopardy for the offense(s) to which the Defendant entered a plea of guilty or which were dismissed under this agreement. In addition, for any charge that is brought as a result of the Defendant's failure to keep this agreement, the Defendant gives up: (1) any right under the Constitution and laws of the United States to be charged or tried in a more speedy manner; and (2) the right to be charged within the applicable statute of limitations period if the statute of limitations has expired.

Furthermore, if the Defendant does not enter an acceptable plea, the Government will move to continue the trial now set to allow the Government adequate time to prepare. The Defendant agrees not to contest such a continuance, and agrees that the resulting delay would be excludable time under 18 U.S.C. § 3161(h).

## XII. MISCELLANEOUS

**A.** **No Other Terms.** This agreement is the complete understanding between the parties, and no other promises have been made by the Government to the Defendant or to the attorney for the Defendant. This agreement does not prevent any Governmental agency from pursuing civil or administrative actions against the Defendant or any property. Unless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does

not bind or obligate Governmental entities other than that specified as the Government in this agreement (i.e., the United States Attorney's Office for the District of Idaho).

B. **Plea Agreement Acceptance Deadline.** This plea offer is explicitly conditioned on the Defendant and the Attorney for the Defendant executing this agreement no later than 9:00 a.m. on November 25, 2019.

## XIII. UNITED STATES' APPROVAL

I have reviewed this matter and the agreement. This agreement constitutes a formal plea offer from the Government. Any oral discussions with the Defendant and defense counsel about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer a valid offer by the Government and is rescinded. I agree on behalf of the United States that the terms and conditions set forth above are appropriate and are in the best interests of justice.

BART M. DAVIS
UNITED STATES ATTORNEY
By:

_____          __11/25/19_____
JOSHUA D. HURWIT                                        Date
Assistant United States Attorney

## XIV. ACCEPTANCE BY DEFENDANT AND COUNSEL

I have read and carefully reviewed every part of this agreement with my attorney. I understand the agreement and its effect upon my potential sentence. Furthermore, I have discussed all of my rights with my attorney and I understand those rights. No other promises or inducements have been made to me, directly or indirectly, by any agent of the Government, including any Assistant United States Attorney, concerning the plea to be entered in this case. I understand that this agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my counsel about a plea do not constitute a plea offer. Any

**Plea Agreement**             14             Rev. September 2019

written offer or agreement made before this agreement is no longer valid and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including entering a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____    _11-25-19_____
David Hansen                              Date
Defendant

    I have read this agreement and have discussed the contents of the agreement with my client. This document accurately sets forth the entirety of the agreement. I have conveyed all written offers from the Government to the Defendant pursuant to Missouri v. Frye, 132 S. Ct. 1399, 1408-09 (2012). I understand that this agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer valid and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States.

_____    _____
Joel M. Hammerman                         Date
Attorney for the Defendant

written offer or agreement made before this agreement is no longer valid and is rescinded. In addition, no one has threatened or coerced me to do, or to refrain from doing, anything in connection with this case, including entering a guilty plea. I understand that, if I am not a citizen or naturalized citizen of the United States, by pleading guilty in this case it is virtually certain that I will be removed from the United States. I am satisfied with my attorney's advice and representation in this case.

_____        _____
David Hansen                                                     Date
Defendant

    I have read this agreement and have discussed the contents of the agreement with my client. This document accurately sets forth the entirety of the agreement. I have conveyed all written offers from the Government to the Defendant pursuant to Missouri v. Frye, 132 S. Ct. 1399, 1408-09 (2012). I understand that this agreement is a formal plea offer from the Government. Any oral discussions between the Government and me or my client about a plea do not constitute a plea offer. Any written offer or agreement made before this agreement is no longer valid and is rescinded. I have discussed with my client the fact that if my client is not a citizen or naturalized citizen of the United States, by pleading guilty in this case, it is virtually certain that my client will be removed from the United States.

_____        _____11\25\19_____
Joel M. Hammerman                                          Date
Attorney for the Defendant