BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
RAYMOND E. PATRICCO, DISTRICT OF COLUMBIA STATE BAR NO. 454792
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF IDAHO
1290 W. MYRTLE ST., SUITE 500
BOISE, ID  83702
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-1413

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DAVID HANSEN,<br><br>　　　　Defendant. | Case No. 4:18-cr-00346-DCN<br><br>**UNITED STATES OF AMERICA'S SUPPLEMENTAL SENTENCING MEMORANDUM** |

　　　　The United States of America, by and through Bart M. Davis, United States Attorney, and the undersigned Assistants United States Attorney for the District of Idaho, submits the following Supplemental Sentencing Memorandum.  By separate motion, the United States requests leave to file this Supplemental Sentencing Memorandum.

　　　　In his Sentencing Memorandum, Defendant requests a sentence of probation with home confinement—effectively a 63- to 78-month departure or variance—in part because of the COVID-19 pandemic and the alleged risk his medical conditions pose to him if incarcerated. (*See* ECF No. 145 at 36-44.)  Defendant's generalized concerns about COVID-19 are speculative and apply to all defendants facing prison.  The Centers for Disease Control ("CDC") does not

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 1**

recognize his medical conditions as placing him at a higher risk for contracting a severe case of COVID-19.  Simply put, his request is one that most any white collar defendant can make, and it is tantamount to a request for amnesty from prison for himself and all white collar offenders. The Court should deny his request.

Section 3553(a) provides that the Court shall consider "the need for the sentence imposed—to provide the defendant with needed. . . medical care. . .."  18 U.S.C. § 3553(a)(2)(D).  The Defendant claims that BOP cannot effectively prevent the spread of COVID-19 within its facilities, so BOP would be incapable of protecting him and providing necessary medical care.  (*See* ECF No. 145 at 36-42.)  Most courts, however, have held that generalized concerns about possible exposure to COVID-19 in prison are not a grounds for compassionate release.[1]  Their reasoning applies with equal force here, where Defendant does not currently suffer from COVID-19 or any other serious medical condition requiring "medical care," but only speculates that he might contract COVID-19 if imprisoned.

---

[1]      *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive professional efforts to curtail the virus's spread."); *United States v. Fitzgerald*, Case No. 2:17-cr-00295-JCM-NJK, 2020 WL 1433932, at *2 (D. Nev. Mar. 24, 2020) ("Defendant's argument applies equally to every detainee in detention; however, the Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee. Therefore, the Court finds Defendant's COVID-19 argument unpersuasive."); *United States v. Mathis*, No. 419CR00265SDJCAN, 2020 WL 2736006, at *1 (E.D. Tex. May 26, 2020) ("Defendant has not demonstrated how general concerns related to COVID-19 apply specifically to his case; Defendant's general concerns regarding COVID-19 apply to every prisoner."); *United States v. Singui*, 2020 WL 2523114, at *4 (C.D.Ca. May 12, 2020) (denying motion for compassionate release where "[defendant] merely speculates that [prison's] additional interventions, including additional testing, might be inadequate to prevent him from becoming exposed."); *United States v. Canada*, No. CR 119-014, 2020 WL 2449344 (S.D. Ga. May 12, 2020) ("generalized concern about possible exposure is at this point too speculative to qualify as extraordinary and compelling."); *United States v. Bastianelli*, No. 17-305, 2020 WL 1493559, at *1 (W.D. Pa Mar. 27, 2020) ("speculation about future conditions does not constitute a 'compelling reason' for temporary release.") (collecting cases denying requests for temporary release due to generalized concerns about COVID-19); *United States v. Eberhart*, No. 13-CR-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .").

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 2**

The risk that the Defendant might contract COVID-19 in a BOP facility is not nearly as significant as he would make it seem. Beginning in January 2020, the BOP activated an Action Plan as it relates to COVID-19. *See* www.bop.gov/coronavirus/index.jsp. Specifically, to prevent the spread of COVID-19 in BOP facilities, the action plan involves: (i) screening all new inmates for COVID-19 exposure risk factors and symptoms; (ii) quarantining asymptomatic new inmates with exposure risk factors for 14 days; (iii) isolating and testing symptomatic new inmates until they test negative for COVID-19; (iv) quarantining existing inmates for at least 14 days in their cells/quarters; (v) maximizing social distancing and staggering meal and recreation times to prevent larger gatherings; (vi) providing face masks to staff and inmates; (vii) suspending social and legal inmate visits; (viii) cancelling staff travel and training; (ix) restricting contractor access to BOP facilities and requiring advanced health screening for essential contractors, including temperature monitoring; and (x) requiring enhanced health screening of staff, including temperature monitoring. *Id.; see also* "Correcting Myths and Misinformation About BOP and COVID-19" at https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf.

Nationwide, BOP's Action Plan has proven successful. As of June 13, 2020, the BOP houses 133,678 inmates nationwide. *See* https://www.bop.gov/coronavirus/. Currently, 1,622 inmates at BOP facilities currently suffer from COVID-19. *Id.* That is approximately 1.2 percent of the current BOP inmate population. For the duration of the pandemic, approximately 85 percent of the positive inmate tests have been concentrated at only 12 of the 180 BOP facilities nationwide. *Id.*[2] Significantly, 74 of the 180 BOP facilities have *never* had a positive

---

[2] Of the total 6,023 positive inmate tests for the duration of the pandemic, 5,149 of them have occurred at Butner Low FCI, Butner Medium I FCI, Chicago MCC, Danbury FCI, Elkton FCI, Forrest City Low FCI, Fort Worth FMC, Lexington FMC, Lompoc FCI, Lompoc USP, Oakdale I FCI, and Terminal Island FCI. *Id.* at "COVID-19 Test Information" tab.

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 3**

inmate test. *Id.* Of course, like society at large, there are likely asymptomatic inmates who have not been tested by BOP. However, for the duration of the pandemic, the percentage of BOP inmates that have tested positive relative to the overall population has remained largely static, and concentrated at the aforementioned 12 facilities. This suggests that the BOP's Action Plan has been effective over time, and at most of its facilities, in curtailing the spread of the virus. Put another way, the spreading "brush fires" the Defendant fears have largely been contained. (ECF No. 145 at 38.)

Nevertheless, in the unlikely event that the Defendant contracts COVID-19 while imprisoned in a BOP facility, he is not at an enhanced risk of suffering a severe case from which he would not recover. The CDC does not recognize the Defendant's age (49) or his medical conditions (sleep apnea and high cholesterol) as placing him at greater risk of contracting a severe case of COVID-19.[3] Significantly, *every case* cited by the Defendant where a court granted an inmate or defendant home confinement due to COVID-19 involved them suffering

---

[3] "Based on what we know now, those at high-risk for severe illness from COVID-19 are:
 •People 65 years and older
 •People who live in a nursing home or long-term care facility
People of all ages with underlying medical conditions, particularly if not well controlled, including:
 •People with chronic lung disease or moderate to severe asthma
 •People who have serious heart conditions
 •People who are immunocompromised
  ◦Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications
 •People with severe obesity (body mass index [BMI] of 40 or higher)
 •People with diabetes
 •People with chronic kidney disease undergoing dialysis
 •People with liver disease"
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher risk.html (last accessed June 13, 2020).

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 4**

from at least one of the CDC's underlying "high risk" medical conditions.[4]  By stark contrast, and by his own admission, the Defendant is an "otherwise healthy adult."  (ECF No. 145 at 42.)

Like he would in a motion for a compassionate release, *see* 18 U.S.C. § 3582(c)(1)(A), the Defendant bears the burden of convincing this Court that he is entitled to a departure or variance, and importantly, one of the extreme magnitude he requests.  *See United States v. Anders*, 956 F.2d 907, 910–11 (9th Cir.1992) ("[a] court must sentence within the applicable guideline range unless valid grounds exist for departure. . . [and t]he defendant bears the burden of proving the appropriateness of a downward departure.").  He has not remotely done so.  As a healthy 49 year-old male, his request for amnesty from prison rests almost exclusively on the fact that he is a non-violent, white collar criminal.  While COVID-19 presents an unprecedented worldwide health risk, it is not a justification for all white collar criminals to avoid prison.  It might be a justification for a few who demonstrate they are amongst the most vulnerable, but the Defendant surely is not one of them.  He has no entitlement to home confinement.

## CONCLUSION

The Court should not grant a departure or variance in this case.  The Government's and Probation's recommendation of 78-months is sufficient but not greater than necessary to meet the purposes of 18 U.S.C. § 3553(a).

---

[4] *See* ECF No. 145 at 43-44 (citing *United States v. Scparta*, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) ("Centers for Disease Control has identified hypertension as a comorbidity that increases the likelihood of serious risk from COVID-19"); *United States v. Connell*, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020) (69 years-old and pre-diabetes); *United States v. Jackson*, 2020 WL 2735724, at *1 (W.D. Va. May 26, 2020) (type 2 diabetes, asthma, obesity); *United States v. Johnnell Smith*, 2020 WL 3027197, at *1 (C.D. Ill. June 5, 2020) (diabetes and morbid obesity); *United States v. Delgado*, 2020 WL 2464685, at *6 (D. Conn. Apr. 30, 2020) (severe obesity and immunocompromised psoriasis); *United States v. Cohen,* Docket 1:19-CR-00741 (S.D.N.Y. June 9, 2020) (asthma)).  In citing these cases, and describing them in parentheticals, the Defendant selectively omits some of the defendants' most serious conditions:  (1) in the *Scparta* parenthetical, the Defendant omits the defendant's high blood pressure and hypertension; (2) in the *Connell* parenthetical, the Defendant omits the defendant's advanced age; (3) in the *Smith* parenthetical, the Defendant omits the defendant's diabetes; (4) in the *Delgado* parenthetical, the Defendant omits the defendant's immunocompromised psoriasis.  *See id.*

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 5**

Respectfully submitted this 13<u>th</u> day of June, 2020.

        BART M. DAVIS
        UNITED STATES ATTORNEY
        By:

        */s/ Joshua D. Hurwit*
        Joshua D. Hurwit
        Raymond E. Patricco
        Assistants United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 13, 2020, the foregoing **UNITED STATES OF AMERICA'S SUPPLEMENTAL SENTENCING MEMORANDUM** was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

| | |
|---|---|
| Curtis Reed Smith<br>SMITH WOOLF ANDERSON & WILKINSON, PLLC<br>3480 Merlin Drive Idaho Falls<br>Idaho Falls, ID 83404 | ☐ United States Mail, postage prepaid<br>☐ Fax<br>☒ ECF filing<br>☐ Email |

*/s/ Raymond E. Patricco*
Assistant United States Attorney

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM - 7**